# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-2054V

|  |  |
|---|---|
| JONATHAN DILGER, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: November 20, 2023 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Amy A. Senerth,* Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Kimberly Shubert Davey,* U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEY'S FEES AND COSTS[1]

On December 30, 2020, Jonathan Dilger ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Program"). Petitioner alleged that following his receipt of an influenza ("flu") vaccine on October 11, 2019, he sustained a left-sided shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury. Petition at Preamble.

Petitioner initially furnished the vaccine administration record and orthopedic records dated through December 24, 2019 (Exs. 1-2) – a little more than two months post-vaccination. But he alleged that his "left shoulder injuries and sequelae lasted for more

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

than six months," and promised that "updated medical records… will be filed upon receipt." Petition at ¶¶ 5-6.[3] Petitioner subsequently filed more evidence as Exs. 3 – 9, and confirmed that no further orthopedic care occurred. Status Report (ECF No. 24).

After the case was assigned to the Special Processing Unit, I ordered an Amended Petition offering more detailed allegations including "whether the statutory six-month requirement was fulfilled." Scheduling Order (ECF No. 32). Instead, Petitioner requested dismissal because "medical records did not document ongoing left shoulder symptoms" (ECF No. 38), and I dismissed the claim for insufficient proof of the statutory six-month requirement (ECF No. 40).

On October 13, 2023, Petitioner filed an application requesting $13,449.50 in fees and $1,060.60 in costs for his attorney (ECF No. 45). However, the application does not address the statutory requirements of good faith and reasonable basis – prerequisites for any attorney's fees and costs award in unsuccessful cases. *See* Section 15(e)(1). On November 2, 2023, Respondent filed a response, deferring to my discretion regarding "whether the statutory requirements for an award of fees and costs have been met in this case, particularly whether there is a reasonable basis for the claim." Respondent's Response (ECF No. 47) at 2. Petitioner did not file a reply.

For the reasons discussed below, I find that Petitioner has failed to establish there was a reasonable basis for the claim. Thus, he is not entitled to an award of attorney's fees and costs, and the fees motion is denied.

I. **Applicable Legal Standards**

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013)

---

[3] The Petition may have been filed without all required medical records due to concerns about preserving the claim due to the then-anticipated removal of SIRVA from the Vaccine Injury Table. On July 20, 2020, the Secretary of Health and Human Services proposed the removal of SIRVA from the Vaccine Injury Table. *National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Proposed Rule*, 85 Fed. Reg. 43794 (July 20, 2020). The proposed rule was finalized six months later. *National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Final Rule*, 86 Fed. Reg. 6249 (Jan. 21, 2021). Approximately one month later, the effective date for the final rule was delayed. *National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Delay of Effective Date*, 86 Fed. Reg. 10835 (Feb. 23, 2021) (delaying the effective date of the final rule until April 23, 2021). On April 22, 2021, the final rule removing SIRVA from the Vaccine Table was rescinded. *National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Withdrawal of Final Rule*, 86 Fed. Reg. 21209 (Apr. 22, 2021).

(discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[4] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a

---

[4] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022), *aff'd without op.*, *slip op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023) (*"Cottingham II"*). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

At issue here, Vaccine Act Section 11(c)(1)(D)(i) requires the establishment of an injury and residual effects lasting for over six months after the date of vaccination. This is a threshold requirement for entitlement. *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

## II. Review of Submitted Evidence

Petitioner received the at-issue flu vaccine in his left deltoid, on October 11, 2019, during a primary care encounter for other concerns. He was 33 years old, with no medical history affecting the left upper extremity. Ex. 1 at 9, Ex. 3 at 7-9; *see also* Ex. 7 (prior hospitalization records).

On November 23, 2019, upon arriving at a MedStar Health System urgent care facility, Petitioner reported that since his receipt of the flu vaccine, his left arm had been "killing him," "hurt more every day," and currently rated 5/10. Ex. 8 at 3. He reported taking Motrin 600 mg twice daily since onset, and Percocet 10 mg twice without relief. *Id.*[5] He denied any past shoulder issues or trauma. *Id.* A physical exam of the left shoulder

---

[55] It is unclear whether Petitioner had been prescribed Percocet for a prior complaint; the medication is not documented in the prior medical records. This November 23rd urgent care encounter was his first medical care for the left shoulder injury. PAR Questionnaire (ECF No. 7) at 1 – 2.

4

documented mild pain to palpation at the mid-deltoid, AC joint, and lateral scapular spine. *Id.* at 4. There was "intact range of motion limitation on left external rotation"; and positive Hawkins and Jobe's signs. *Id.* After receiving an injection of ketorolac (a non-steroidal anti-inflammatory drug, or "NSAID"), Petitioner reported improvement in his pain and ability to move his arm. *Id.* He was assessed with a rotator cuff injury, prescribed diclofenac sodium to last 30 days, and instructed to schedule appointments with both physical therapy ("PT")[6] and orthopedics. *Id.*

At a December 3, 2019, initial evaluation, orthopedist Christopher Looze, M.D. at Medstar Orthopedic Institute, recorded that Petitioner had experienced the atraumatic onset of left shoulder pain approximately six weeks earlier. Ex. 2 at 7. The pain was "deep within" and "over the lateral aspect" of the shoulder; specifically occurring with overhead and behind the back activity; and had not responded to activity modification, steroids, or time. *Id.* Dr. Looze's physical exam found decreased range of motion (160 degrees) and pain on forward elevation. *Id.*[7] External rotation was 9 degrees and internal rotation was 30 degrees. *Id.* Hawkins, Neer, and Speed signs were positive. *Id.* Strength was nearly normal (except for "4+/5 rotator cuff strength empty can forward elevation"). *Id.* After noting that x-rays of the shoulder were unremarkable, Dr. Looze ordered an MRI to assess for rotator cuff pathology. *Id.*

At a December 24, 2019, follow-up appointment, Petitioner now reported that his pain was "significantly improved" and he "wishe[d] to go back to work." Ex. 2 at 8. Dr. Looze's physical exam documented "full active and passive range of motion symmetric contralateral side, 5/5 rotator cuff strength in all planes, and negative Hawkins [and] Neer sign[s]." *Id.* Dr. Looze recorded that an MRI of the left shoulder demonstrated subdeltoid bursitis and some bone marrow edema, but an otherwise intact rotator cuff and no significant additional pathology. *Id.* Dr. Looze assessed that Petitioner's pain was "consistent with subacromial impingement [and] posterior rotator cuff tendinitis," which "appear[ed] to be resolving." *Id.* Petitioner would "return to work as he can tolerate" and follow up as needed. Ex. 2 at 8; *see also* Ex. 8 at 7 (Dr. Looze's letter stating that Petitioner "may return to work with no restrictions as of 1/2/2020").

Upon resupplying records as Ex. 8, Medstar certified:

---

[6] Petitioner never underwent physical therapy.

[7] Normal shoulder flexion for adults ranges from 165 to 180 and normal abduction for adults varies from about 170-180 degrees. Cynthia C. Norkin and D. Joyce White, *Measurement of Joint Motion: A Guide to Goniometry* (F. A. Davis Co., 5th ed. 2016) at 72, 80.

5

```
UC - 11/23/2019              Cancel Appt
Looze - 12/3/2019            2/4/2019
Looze - 12/24/2019           2/11/2019
                             2/25/2019
                             3/4/2020 - No Show
```

Ex. 8 (ECF No. 20-2) at 2.[8] The next medical records are from later in 2020, when Petitioner sought care for eye injuries sustained while working as a welder. Ex. 9 at 213-48; Ex. 3 at 10-11. In December 2021, he sought care again, after a dog bit his left hand. Ex. 9 at 1-212. However, there is no medical record documentation or other contemporaneous evidence of an ongoing left shoulder injury.

In June 2021, Petitioner stated that that he "suffered the residual effects or complications of left shoulder injuries for more than six months, which were caused in fact by the influenza vaccine." Ex. 5 (ECF No. 10) at ¶ 4. This document is labeled as an affidavit but not dated, notarized, or sworn under penalty of perjury.[9] Petitioner completed, and counsel filed, the statement in June 2021. *See* AFC Application – Ex. A at 5 – 7.

### III.   Reasonable Basis Analysis

As previously observed, this Petition was likely filed without all required medical records due to concerns about preserving the claim due to the then-anticipated removal of SIRVA from the Vaccine Injury Table. *Supra* n. 3. While it is understandable that counsel might want to assist the Petitioner in preserving a right of action, controlling Federal Circuit case law makes clear that this sentiment is not equivalent to objective evidence in support of the claim. *See Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017).

Petitioner's motion for a dismissal decision makes a gesture towards reasonable basis, arguing that the Petition was filed "based upon counsel's experience, specifically Petitioner's diagnosis, the recommended course of physical therapy, referral to an

---

[8] This contradicts Petitioner's report of *medical care* on February 4, February 11, and March 4, 2020. *See* PAR Questionnaire dated Nov. 30, 2020 (ECF No. 7-1). After obtaining Exhibit 8 from Medstar, Petitioner and his counsel confirmed that "there are no additional appointments past December of 2019." Status Report (ECF No. 24).

[9] *Compare* Ex. 5 at 2 ("I understand that this affidavit will be filed in connection with my petition filed in the United States Court of Federal Claims in accordance with the Vaccine Injury Compensation Program.") *to* 28 U.S.C.A. § 1746 (providing that an affidavit, and a statement sworn under penalty of perjury, will be given the same force and effect).

orthopedic specialist, as well as communications regarding Petitioner's ongoing left shoulder symptoms." (ECF No. 38 at 1).

However, the objective medical record evidence in existence at the time of the Petition's filing *did not support six months' severity*. Instead, the record showed that less than three months post-vaccination, an orthopedist recorded that a physical exam of the subject left shoulder was unremarkable, the injury was "significantly improved" and "resolving," and Petitioner could return to work (as a welder) without restrictions or any further treatment. The orthopedist's assessment also strongly suggests that any residual effects would resolve by the six-month mark – and there are no subsequent medical records to support an alternative finding.

Petitioner's later-prepared PAR Questionnaire seems to hint that there were additional dates of medical treatment relevant to the claim. But such contentions are contradicted by Medstar's later response revealing that those dates represented *cancellations*. Even if those pieces of evidence constitute "objective" evidence requiring consideration under the Federal Circuit's precedent, *at best*, they suggest that Petitioner had some orthopedic concerns up until March 4, 2020, which is still less than six months post-onset.

As a result, I cannot find even a scintilla of evidence would have supported Petitioner's claim regarding six months' severity, which is a threshold requirement for eligibility to proceed in the Vaccine Program. In such circumstances, the Act places the risk of filing the claim on counsel, and does not allow an award of fees.

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim. **Petitioner's motion for attorneys' fees and costs is therefore DENIED.** The Clerk of the Court is directed to enter judgment in accordance with this Decision.[10]

    **IT IS SO ORDERED.**　　　　　　　　　　　　s/Brian H. Corcoran
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Brian H. Corcoran
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.